NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

J. M. LASSING, H. A. Thompson, Sr., Marshall O. Thompson, Mrs. J. R. Hanson, Mrs. Richard C. Patrick, Sr., and H. A. Thompson, Jr., d/b/a Consumers Gasoline Stations, Respondents.

No. 14231.

United States Court of Appeals Sixth Circuit.

Dec. 17, 1960.

Vivian Asplund, N. L. R. B., Washington, D. C. (Stuart Rothman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Frederick U. Reel, Vivian Asplund, Attys., N. L. R. B., Washington, D. C., on the brief), for petitioner.

James C. Kirby, Jr., and D. L. Lansden, Nashville, Tenn. (James C. Kirby, Jr., D. L. Lansden, Waller, Davis & Lansden, Nashville, Tenn., on the brief), for respondent.

Before MARTIN, MILLER and WEICK, Circuit Judges.

PER CURIAM.

The National Labor Relations Board seeks enforcement of its order of March 8, 1960, based upon its finding that respondent had violated Section 8(a) (1) and (3) of the Act, 29 U.S.C.A. § 158 (1, 3) by discharging three employees because they had joined the Union, and had violated Section 8(a) (1) and (5) by refusing thereafter to bargain with the Union.

The respondent is a partnership operating an independent chain of retail gas and service stations in Tennessee and Kentucky. During the latter part of 1958 it had considered and studied the problem of whether it should continue to truck gas with its own equipment and employees, particularly in the light of mounting costs and what it deemed to be inadequate equipment, and had decided to adopt a common carrier system of gas delivery as soon as anything occurred which would increase costs and, in any event, when the truck licenses expired on April 1, 1959.

On January 1, 1959, three of respondent's drivers joined the Union. The Union requested recognition and a meeting for the purpose of negotiating a collective bargaining agreement. A meeting was arranged for January 20, 1959. On January 19, 1959, the drivers were instructed to report at the respondent's office at 8:30 A.M. When they arrived respondent told them that it was going to contract with a common carrier to transport the gasoline and gave the three drivers herein involved their separation notices and final checks. The three drivers thereupon left and have not since been in respondent's employ.

When the Union and respondent met later that morning, the Union renewed its request for recognition. Respondent refused, announcing that it had for a time contemplated abandoning its method of shipping gas and that the coming of the Union, with the added payroll expense thereby entailed, was, in effect, the straw that broke the camel's back.

This case presents basically the same question considered by this Court and decided adversely to the Board's contention in N. L. R. B. v. Adkins Transfer Co., 6 Cir., 226 F.2d 324, and

N. L. R. B. v. R. C. Mahon Co., 6 Cir., 269 F.2d 44. We there held that a company may suspend its operations or change its method of doing business, with the resulting loss of employment on the part of certain employees, so long as its change in operations is not motivated by the illegal intention to avoid its obligations under the National Labor Relations Act. A change in operations motivated by financial or economic reasons is not an unfair labor practice under the Act.

The Board contends that this case is not controlled by the ruling in the Adkins and Mahon cases because the respondent accelerated its proposed change in operations upon its learning that the three employees had joined the Union and before any demands for increased pay for said employees had been made upon it by the Union, and that such action constituted the discrimination found by the Board to exist.

We do not agree. Although the Union had made no demand for increased pay, the evidence fully justified respondent's belief that such demands would be made and could not be met. Under the circumstances we do not believe it was incumbent upon the respondent to delay the effective date of its new method of operation previously decided upon before the advent of the Union. It will be noticed that the respondent's decision to change its method of operation did not include a commitment to continue under its existing method of operations until April 1, 1959. That date fixed the maximum period of time which would elapse before the change would become effective. The respondent had decided to make the change effective before that date if anything occurred which would increase its costs. The advent of the Union was a new economic factor which necessarily had to be evaluated by the respondent as a part of the overall picture pertaining to costs of operation. It is completely unrealistic in the field of business to say that management is acting arbitrarily or unreasonably in changing its method of operations based on reasonably anticipated increased costs, instead of waiting until such increased costs actually materialize.

There is no evidence in the present case, and there is no contention made, that there was any anti-union background on the part of the respondent. Fundamentally, the change was made because of reasonably anticipated increased costs, regardless of whether this increased costs was caused by the advent of the Union or by some other factor entering into the picture. This did not constitute discrimination against the three employees with respect to their tenure of employment because of membership in the Union, within the provisions of Section 8(a) (1) and (3) of the Act. N. L. R. B. v. Houston Chronicle Pub. Co., 5 Cir., 211 F.2d 848, 854.

Since that division of the respondent's business was discontinued and the employment of the three drivers legally terminated, there was no basis for a meeting with the Union later for the purpose of collective bargaining. N. L. R. B. v. Houston Chronicle Pub. Co., supra.

Enforcement of the Board's order is denied.