**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**DALE INDUSTRIES, INC., and Wyoming Service Company, Respondents.**

**No. 16286.**

United States Court of Appeals
Sixth Circuit.

Feb. 4, 1966.

Peter Giesey, Atty., National Labor Relations Board, Washington, D. C., for petitioner, Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Assoc. Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Gary Green, Atty., National Labor Relations Board, Washington, D. C., on the brief.

David M. Fried, Detroit, Mich., for respondents, Lampert & Fried, Detroit, Mich., of counsel.

Before CELEBREZZE, Circuit Judge, McALLISTER, Senior Circuit Judge, and KENT, District Judge *.

CELEBREZZE, Circuit Judge

The National Labor Relations Board seeks enforcement of its orders against Respondents, Dale Industries, Inc. and Wyoming Service Company, here regarded as a single employer and hereinafter referred to as Respondents. The Board found that Respondents violated Section 8(a) (1) of the National Labor Relations Act by threatening reprisals against employees for joining the United Industrial Workers of America, Local 286, and by interrogating employees concerning the extent of Union organization in the Respondents' plant. The Board also found that Respondents violated Section 8(a) (3) and (1) of the Act by discriminatorily reducing the hours of work of four Union adherents [1], and later by discharging two of these employees [2]. 29 U.S.C., Section 158(a) (1), and (a) (3). The Board's decision and orders are reported at 145 N.L.R.B., No. 108.

Respondents are Michigan corporations located in Detroit. Respondent Dale Industries, Inc., manufactures and sells metal moldings, gutters, roofing edges, and related building products. Respondent Wyoming Service, Inc., supplies Dale Industries with manpower.

In mid December, 1962, two Union organizers regularly came to the Respondents' plant and solicited membership of all the employees of Respondents. This solicitation occurred outside the plant and was observed by the Respondents. With several exceptions, all twenty employees of the Respondents signed Union cards during this December solicitation.

In January, 1963, two employees, Frailand and Brostean, asked Albert Fruman, President of Dale Industries, Inc., if they had to join a Union. Fruman answered, "no, you don't have to join a Union if you don't want to." A third employee, Fisher, asked President Fruman if he would lose his job if he signed up with the Union, and Fruman answered, "no, go on back to work". In mid January, 1963, employee Mance was asked if he signed a Union card. Mance was later told by his supervisor that he would "lease his trucks out" if the Union came in, and the "Union shop would be run by the books". This conversation took place when his supervisor called Mance to his office to talk about Mance's work attitude. On January 28, 1963, employee Landers asked President Fruman for a ten dollar loan. Fruman objected to lending Landers any money and then told Landers that he was one of the ringleaders of the Union and that he should go to his "Union buddies" for the loan. Fruman then asked employee Ingram to loan ten dollars to Landers. Ingram refused, saying Landers' credit was no good. No statements concerning the Union were made to employees Ford or Ingram.

On the basis of these statements, the Board found that the Respondents violated Section 8(a) (1) of the Act. The National Labor Relations Act specifically provides that the expression of any views shall not be evidence of an unfair labor practice if such expressions contain no threat of reprisal or force or promise of benefit. 29 U.S.C., Section 158(c). Interrogation regarding Union activity does not in and of itself violate the Act. There must be an over-all pattern to restrain or coerce. National La-

---

* W. Wallace Kent, Chief Judge, United States District Court, W.D., Michigan, sitting by designation.

1. Bruce Landers, Robert Ford, Emmett Ingram and John Mance.

2. Landers and Ford.

bor Relations Board v. Tennessee Coach Co., 191 F.2d 546 (C.A.6, 1951); Lincoln Bearing Co. v. National Labor Relations Board, 311 F.2d 48 (C.A.6, 1962).

■ Considering the entire record, we are of the opinion that the above comments were made in the exercise of free speech, and that any illegal purpose was so minimal that Section 8(a) (1) of the Act was not violated.

On January 28, 1963, the work week of employees Landers, Ford, Ingram and Mance was reduced to three days a week. While Landers worked in several departments, his principal job was working in the gutter department. Prior to his partial lay-off, he had been told his work on the slitting machine was not satisfactory. Ford worked in the valley department. Ingram worked in the slitter, unloaded trucks, and swept the floors. His principal job was as a porter, sweeping floors. Mance was a truck driver, operated the hi-lo and worked in the gutter room. Mance came late to work at least once a week during the several months prior to his partial lay-off. In the first week of January he damaged a hi-lo machine.

In December, 1962, shipping had fallen off 25½% over the previous five months, and in January, 1963, shipping had fallen off 53% over the previous five months. Also, a year's stockpile of "valleys" was on hand. It was for these reasons, Respondents maintain, that the work week of Landers, Ford, Ingram and Mance was reduced. Respondents' plant was not run on a seniority basis. There were other men whose work week was not reduced who had less seniority than the above four whose work week was reduced. After the reduction, other employees were hired. After two weeks, the new employees were laid off and then, after one week of lay-off, were recalled. While the record is in conflict, it appears the new employees performed jobs which were substantially different from the jobs of the four laid off. Several months later, Ingram and Mance again worked full time.

In early February, Landers and Ford were discharged after an argument. Landers and Ford were operating the slitting machine. Landers fed the pipe into the machine and Ford took it up. The pipe was jamming the machine. John Bykaylo was called to fix the machine. This happened several times. The second time Bykaylo and Landers began arguing and calling each other names. Bykaylo left and started to go home. President Fruman was told by Bykaylo that Landers threatened to kill him with a hammer. Fruman talked to Landers and Ford, and both denied that Landers threatened Bykaylo with a hammer. Fruman then asked all three to take lie detector tests. Landers and Ford at first agreed, and then said they would not do so unless a Union man was present. Fruman then discharged Landers and Ford.

The Board found the Respondents had violated Section 8(a) (3) and (1) of the Act when they reduced the work week of Landers, Ford, Ingram and Mance, and discharged Landers and Ford.

■ In National Labor Relations Board v. Lassing, 284 F.2d 781 (C.A.6, 1960), this Court held that an employer may curtail operations, with a resulting loss of employment on certain employees, as long as the changes in operations are not illegally motivated. Only discrimination which encourages or discourages membership in a labor organization is prohibited by the Act. Curtailment or suspension of operations, motivated by economic reasons, is not an unfair labor practice under the Act. See National Labor Relations Board v. Adkins Transfer Co., 226 F.2d 324 (C.A.6, 1955); Plasti-Line, Inc. v. National Labor Relations Board, 278 F.2d 482 (C.A.6, 1960).

The findings of the Board with respect to questions of fact, if supported by substantial evidence on the record considered as a whole shall be conclusive. National Labor Relations Act, as amended, Sections 10(e) (f), 29 U.S.C., Section 160 (e) (f).

Considering the entire record, we conclude there is not substantial evidence of an illegal motive to support the Board's finding that the partial lay-offs and the discharges violated Section 8(a)(3) and (1) of the Act. There is substantial evidence that the Respondents' conduct relating to the partial lay-off of the four employees was reasonably adopted to achieve legitimate business ends. By January, 1963, shipping had fallen off 53% over the previous five months. Respondents produced and had on hand a year's stock of valleys. The reasonable conclusion is that the employees most affected by these adverse economic conditions had their work week reduced.

The evidence is likewise substantial that Landers and Ford were discharged because of the argument with Bykaylo, and not because of Union animus on the part of the Respondents. The record does not disclose a prior history of Union animus on the part of the Respondents.

The enforcement of the Board's orders is denied.