**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**The FREEMAN COMPANY, Respondent.**

**No. 72-1149.**

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 17, 1972.

Decided Dec. 27, 1972.

Edward N. Bomsey, Atty., N.L.R.B., Washington, D. C., for petitioner.

William A. Harding, Lincoln, Neb., for respondent.

Before VAN OOSTERHOUT, Senior Circuit Judge, LAY, Circuit Judge, and DURFEE, United States Court of Claims Judge.

LAY, Circuit Judge.

The trial examiner found Section 8(a)(1) violations of the National Labor Relations Act arising from The Freeman

Company's[1] discriminatory reduction of overtime hours of four employees and because of certain coercive statements made by one Schneider, a company supervisor. The trial examiner additionally found the company's ultimate failure to negotiate a collective bargaining agreement with a union designated by the majority of employees as their bargaining representative to be a violation of Section 8(a)(5) of the Act. The Board enforced the 8(a)(1) violations and ordered back pay for those employees which the examiner found to have been discriminated against when their overtime hours were reduced. However, the Board concluded that the bargaining was conducted in good faith, that no union animus resulted from the failure to negotiate a contract and that no 8(a)(5) violation therefore occurred. The Board seeks enforcement here only of the 8(a)(1) violations.

We find substantial evidence on the record as a whole to support the 8(a)(1) violation relating to the coercive statements made to employees. However, we hold that the order requiring back pay and reinstatement of overtime hours should not be enforced. We find the record relating to discrimination in reduction of hours to be equivocal and lacking in substantial evidence when considering the whole record to sustain the order.

In October 1969, the company voluntarily recognized the union designated by the majority of employees signing authorization cards to be their bargaining representative. The company began to negotiate a contract. Although agreement was never reached, the Board found the company at all times acted in good faith and manifested no union animus. On March 6, 1970, the company was notified that 32 of the then 59 employees in the bargaining unit had signed a petition withdrawing their support for the union. According to the company's evidence there had been a general decline in sales since January, with a severe drop in February, and that these depressed economic conditions necessitated the cutback in overtime hours in March. On March 9, 1970, this policy was invoked on a plant-wide basis. The four employees involved, two of whom were on the union bargaining committee, had their overtime hours reduced ranging from two and one-half to five hours per week. This led to the unfair labor practice charges. The four employees had not signed the antiunion petition. The union urges that this fact was sufficient to infer that the company had knowledge of the union activity of the four men. The Board urges that union animus is further established by the coercive statements of Schneider made to some of the employees.[2]

The rule is generally recognized that where the company demonstrates a proper business reason which standing alone would justify the company's action affecting employees, the Board has the burden to overcome this fact and demonstrate that the reasons exercised by the company were pretextual. Reliance Insurance Companies v. N. L. R. B., 415 F.2d 1, 7 (8 Cir. 1969); N. L. R. B. v. Gotham Industries, Inc., 406 F.2d 1306, 1309 (1 Cir. 1969). Here economic reasons did exist which justified the company's cutback. There is little or no dispute as to this fact. The company acted company-wide with a uniform policy and reduced the hours of all employees (except supervisors) who worked fifty or more hours per week. From this fact it is difficult to reason

1. The Freeman Company, located in Yankton, South Dakota, manufactures aircraft products, hydraulic cylinders and power steering products.

2. Schneider allegedly told employee Wittmeier that his loss in overtime hours was due to his failure to sign the antiunion petition. Employee Fender testified that Schneider told him that he could "practically guarantee" him a pay raise if he signed the antiunion petition; that "things were going to get rough" if he did not stop talking about the union; and that some employees would probably get back the overtime hours lost by their union activities if they were "good boys."

that any invidious discrimination took place relating to the four employees involved. Several employees who also had hours reduced were men who similarly did not sign the antiunion petition.[3] Therefore, the inference that the company singled out these four employees because of their failure to sign the antiunion petition becomes tenuous at best.

The only counter evidence which the Board relies on to substantiate the inference that the reduction was discriminatory relates to the remarks made by the superintendent Schneider. All of these remarks were made subsequent to the reduction in overtime hours. In one remark made to employee Wittmeier, Schneider only "thought" that the employees would not have lost their overtime hours except for their union activity. He later allegedly told Fender, "If you boys are good boys for the next couple of weeks, you'll *probably* get your hours back." (Emphasis ours.) Schneider testified at the hearing and denied the remarks made, but the examiner did not credit his denial. Even assuming the remarks were made there exists no evidence whatsoever that Schneider had any knowledge or role in deciding who, when or what policy action would be pursued in taking up the slack created by the company's economic difficulties. Schneider was not shown to be working on a policy making level. Statements such as "he thought" and "probably" are bottomed more on opinion than authoritative knowledge. Cf. N. L. R. B. v. Modern Plating Corp., 358 F.2d 46, 49 (7 Cir. 1966). There is only a naked suspicion that his remarks originated from a company policy decision to discriminate against these employees.[4]

Determining whether substantial evidence *exists on the record as a whole* requires the exercise of a judgmental process. Formulas and standards do not provide mechanical answers. However, where analysis reduces the record to mere suspicion to support the Board's charges, we are satisfied that this fails to provide sufficient integrity to sustain the examiner's and Board's finding. See Northern Petrochemical Co. v. N. L. R.B., 469 F.2d 352 (8 Cir. 1972).

The petition for enforcement is granted as it relates to ordering the company to cease and desist from interfering with, restraining or coercing employees in the exercise of their Section 7 rights. Enforcement is denied as to the Section 8(a)(1) charge relating to discrimination in reduction of overtime hours and restoration of back pay.

3. In all, ten employees received overtime reductions in March and May of 1970. All ten of these employees had signed a union authorization card and had not signed the antiunion petition. Moreover, in addition to the four employees involved in this case, twenty-three other employees did not sign the antiunion petition and there was no evidence introduced showing that these employees were discriminated against.

4. In this regard, it is significant that the company had no history of any antiunion animus. The company voluntarily recognized the union and bargained in good faith. Furthermore, the record discloses that the company supervisors were specifically instructed not to get involved in any way with the union activities.