487 F.2d 1398
 85 L.R.R.M. (BNA) 2112, 72 Lab.Cas. P 14,168
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
National Labor Relations Board, Petitioner
v.
Volkswagen South Atlantic Distributor, Inc., Respondent.
 No. 73-1592.
 United States Court of Appeals, Fourth Circuit.
 Dec. 21, 1973.
 
 Before HAYNSWORTH, Chief Judge, FIELD and WIDENER, Circuit Judges.
 
 PER CURIAM
 
 1
 The National Labor Relations Board found that Volkswagen South Atlantic Distributor, Inc., violated Sections 8(a)(1) and 8(a)(3) of the National Labor Relations Act. The Board now petitions for enforcement of its order requiring the Company to cease and desist from its unfair labor practices; offer Louis R. Watson his former job or a substantially equivalent position, and make him whole for any loss of earnings or seniority suffered by reason of the discrimination against him; and post appropriate notices. For the reasons stated in this opinion, we grant full enforcement of the Board's order.
 
 
 2
 The Board found that the Company violated Sections 8(a)(1) and (3) of the Act by discharging Louis Watson because he led a drive by a union to organize the Company's 45 warehouse employees. The Company contended that Watson was fired for his poor attitude and presented Watson's two-year employment history as marked by misconduct. Incidents cited to justify the discharge were a horseplay episode occurring in April, 1971, which resulted in a reprimand; a verbal warning of possible dismissal for poor job attitude in June, 1971; excessive absenteeism in 1971; and one or two verbal warnings for apparent loafing between March, 1972, and June, 1972. The dismissal occurred on Monday, June 26, 1972.
 
 
 3
 The discharge took place at the end of a period when Watson was very active in attempting to unionize the warehouse. The evidence showed that Watson had talked about union representation periodically during the course of his employment. Shortly before his discharge, however, his efforts became more substantial. In May, 1972, Watson contacted a union business agent and asked him to represent the Company's employees, and in June Watson obtained blank union application cards. In a three-day period from Wednesday, June 21, to Friday, June 23, Watson solicited other employees and obtained 30 signed cards. The decision to discharge was made that Friday and was effectuated the following Monday. The Company was aware of Watson's union activities during this period. Moreover, evidence was presented to rebut the Company's alleged justification for the discharge. It was shown that Watson was given two merit increases during his employment, and on the form authorizing the second increase, given in March, 1972, it was noted that "Mr. Watson is a productive employee. Past problem with absenteeism has been resolved." Also in March, 1972, the Company responded to an inquiry submitted by a mortgage lender by stating that the likelihood of Watson's continued employment was "Excellent." It was also noted that two of the incidents relied on by the Company had occurred a full year prior to the discharge.
 
 
 4
 The sole question presented with regard to the discharge is whether substantial evidence on the record as a whole supports the Board's finding that the discharge was motivated by Watson's union activities. We must uphold the Board's acceptance of one of two fairly conflicting views "even though the court would justifiably have made a different choice had the matter been before it de novo." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951). Since the record contains evidence which supports the finding that the discharge was discriminatorily motivated, we must enforce the Board's order. We are not permitted to substitute our judgment for that of the Board. NLRB v. Lester Brothers, Inc., 337 F.2d 706 (4 Cir.1964).
 
 
 5
 The Board also determined that the Company violated Section 8(a)(1) of the Act by coercively interrogating employee Larry Saul. This finding was based on two separate incidents when the warehouse Manager questioned Saul concerning his feelings toward the Union, whether he had signed a union card, and whether he had attended a particular union meeting. The Board concluded that the Manager had conveyed an impression of surveillance during the second of these discussions by a statement that other employees had told him who had attended the meeting, and that he had "a good idea of who was there." While the Board's finding of a violation is not particularly strong, we decline to overturn it. Under the circumstances, "we think the Board properly exercised its primary duty 'to determine the significance of particular acts of interrogation in the light of the entire record in the case.' Blue Flash Express, Inc., 109 NLRB 591, 595 (1954). The Board might perhaps just as easily have found the questioning non-coercive, but we do not find the inference of coercion insubstantial." NLRB v. Lexington Chair Co., 361 F.2d 283, 290 (4 Cir.1966).
 
 
 6
 Having affirmed the findings of violations of Section 8(a)(1) and (3) of the Act, we conclude that the Board's choice of a general cease and desist order as an appropriate remedy was not "without legal justification." Luxuray of N.Y., Div. of Beaunit Corp. v. NLRB, 447 F.2d 112, 114 (2 Cir.1971). Accordingly, we dispense with oral argument and order full enforcement of the Board's order.
 
 
 7
 Enforcement granted.