LINCOLN BEARING COMPANY and
Lincoln Bearing Surplus Company,
Petitioners,
v.
NATIONAL LABOR RELATIONS
BOARD, Respondent.
No. 14796.

United States Court of Appeals
Sixth Circuit.
Dec. 26, 1962.

Bernard S. Goldfarb, Cleveland, Ohio, on the brief, for petitioners.

Elliott Moore, National Labor Relations Board, Washington, D. C., Stuart Rothman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Assistant Gen. Counsel, Rosanna A. Blake-Elliott Moore, Attorneys, National Labor Relations Board, Washington, D. C., on the brief, for respondent.

Before CECIL, Chief Judge, O'SULLIVAN, Circuit Judge, and DARR, Senior District Judge.

### CECIL, Chief Judge.

This case is before the Court upon the petition of Lincoln Bearing Company and Lincoln Bearing Surplus Company to review and set aside an order of the National Labor Relations Board, the respondent herein. The Board in its answer requested enforcement of the order.

The petitioners were considered to be a single employer and it was found by the Board that they engaged in unfair labor practices, within the meaning of Sec. 8(a) (1) of the Labor Management Relations Act, by interfering with, restraining and coercing its employees in the exercise of rights guaranteed in Section 7 of the Act. (Sections 158 (a) (1) and 157, Title 29 U.S.C.) The order was in the usual form to cease and desist from the unfair labor practices and to post copies of a notice to employees.

The proceedings before the Trial Examiner and the Board were instituted by charges filed by International Union, United Automobile, Aircraft and Agricultural Implement Workers of America, AFL-CIO, hereinafter called the Union. The petitioners will be referred to as the employer.

On September 1, 1960, the Union filed a charge, in Case No. 2247 against Lincoln Bearing Company, alleging that it had interfered with, restrained and coerced its employees in the exercise of their rights under the Act, guaranteed in Section 7, and in violation of Section 8(a) (1). A similar charge was filed on September 22, 1960, against Lincoln Bearing Surplus Company. On October 17, 1960, the employer and Union executed and entered into a settlement agreement of these two cases. The agreement was approved by the Regional Director on October 19th. In short, the agreement provided that the employer would not in any way interfere with the employees in their determination of whether they should choose the Union or any union to represent them as bargaining agent.

The employer and the Union signed an agreement on October 19th for a consent election. The election was held on the 27th of October and resulted in defeat of the Union. There were forty-four eligible votes of which seventeen were cast in favor of the Union and twenty-six against it.

November 10th, following the election, the Union filed an original charge against the employer, in Case No. 2289. This charged that the employer engaged in various acts of interrogation, unlawful threats, etc., on or about October 25th or 26th, 1960. Subsequent amendments were filed to the charge, on November 23rd and December 20th. On December 21st, the Regional Director notified the employer that the settlement agreement, in cases numbered 2247 and 2259, was set aside and that a complaint should issue on those cases, as well as 2289. A consolidated complaint was filed and, as amended, was issued on January 12, 1961.

This complaint charged that the employer had violated Section 8(a) (1) of the Labor Act, since August 25, 1960, through various acts of interrogation, exacting promises and making promises and threats, all for the purpose of keeping the Union out of the plant. The

unfair labor practices charged after October 19th, the date of the settlement agreement, were interrogation of employees, warning of layoffs, if the Union won the election, exacting promises to vote against the Union and granting a wage increase to one employee on his promise to vote against the Union.

■ The complaint contained allegations of violations during the period covered by the settlement agreement, together with alleged violations occurring subsequent thereto. An agreement will not be set aside unless there is a breach of the agreement or a subsequent independent violation of the Act by the parties to the agreement. Jackson Mfg. Co., 129 N.L.R.B. 460. See Wallace Corp. v. N. L. R. B., 323 U.S. 248, 254, 65 S.Ct. 238, 89 L.Ed. 216. The Trial Examiner properly undertook first to determine whether there was an independent violation of the Act after the approval of the agreement.

The Examiner credited three witnesses, upon whose testimony he found that unfair labor practices were committed by the employer after the date of the execution of the contract.

Dorothy Cole testified that on the day before the election Louis Levine, president of the employer, asked her a question concerning whether she was for or against the Union. There was a misunderstanding as to how the question was phrased. She meant by her answer to say that she was opposed to it. To clear up this apparent misunderstanding, Mr. Levine called her in the evening and she said she was against the Union. About an hour before the election, Mr. Levine approached Mrs. Cole at the table where she worked and said that he heard she was working for the Union. She answered: "No. I don't believe I have ever told you that." He said: "Are you still with us, then?" and she answered: "Yes."

Rose Slumski testified that she was called into the office by Louis Levine during the week of the election and shown some kind of a sample ballot. Mr. Levine asked her if she had ever seen that before and she said she had seen one at the General Electric Company when a vote was taken there. He then asked her how she voted and she said she was undecided and did not vote. He told her that if she did not put anything down it would be in favor of the Union.

Ellen A. Houser testified that on the day before the election Louis Levine asked her in the shop if she were still voting no and she answered that she was.

The general counsel failed to offer any credible evidence that the employer warned the employees that layoffs would follow if the Union won the election, that promises were exacted to vote against the Union and that a wage increase was granted to one employee in return for his promise to vote against the Union.

■ The first question is whether the conduct of the employer, as evidenced by the testimony of the three witnesses, who were credited, constitutes an unfair labor practice in violation of Section 8(a) (1) of the Act. "The test is whether the employer engaged in conduct which, it may reasonably be said, tends to interfere with the free exercise of employee rights under the Act." N. L. R. B. v. Ford, 170 F.2d 735, 738, C.A.6; N. L. R. B. v. Illinois Tool Works, 153 F.2d 811, 814, C.A.7.

It was said in N. L. R. B. v. Tennessee Coach Co., 191 F.2d 546, 555, C.A.6: "Before inquiries as to union membership and statements by employers or supervisory employees can be held to be unfair labor practices, they must be shown to have some relation to the coercion or restraint of the employees in their right of self organization."

In N. L. R. B. v. McCatron et al., 216 F.2d 212, 216, C.A.9, cert. denied 348 U.S. 943, 75 S.Ct. 365, 99 L.Ed. 738, the court said: "Interrogation regarding union activity does not in and of itself violate § 8(a) (1). This holding may be at variance with that of the Board as expressed in Standard-Coosa-Thatcher Co., 1949, 85 N.L.R.B. 1358. We are of the opinion that in order to violate §

8(a) (1) such interrogation must either contain an express or implied threat or promise, or form part of an overall pattern whose tendency is to restrain or coerce." See also N. L. R. B. v. Roberts Brothers, 225 F.2d 58, 60, C.A.9.

In N. L. R. B. v. Peerless Products, Inc., 264 F.2d 769, at p. 772, C.A.7, the court said: "Upon consideration of the record as a whole we have concluded that the interrogation of the employees was not intended to and did not interfere with their organizational activities, that there were no coercive threats made to them, and that the calling in of the small personal loans for repayment did not constitute a withdrawal of economic benefits by the Company in violation of Section 8(a) (1) of the Act. At best these charges were petty and trivial. The burden was upon the Board to establish the alleged independent violation of this section of the Act and it did not sufficiently discharge this burden. We hold that the cease and desist order directed to these allegations will not be enforced, and the order against the Company is modified by deleting these portions."

In N. L. R. B. v. McGahey, 233 F.2d 406, at p. 409, C.A.5, the court said: "Nor is it to punish the employer because McGahey made inquiries whether the employees did or did not desire union representation. This is permissible under the Act. Had these been casual, moderate inquiries by McGahey unrelated to evidence indicating that employees had ground to consider them as forecasting reprisals, these acts would not have been an unfair labor practice. (Citations omitted.) But interrogation becomes unlawful when it is a part of the means by which the employer's hostility carries with it the purpose to retaliate against Union sympathizers and, by threat of job or other reprisals, coerce them into a vote of action which does not express their free will." We find no such purpose either express or implied in the interrogation of the three witnesses whose testimony is under consideration here.

It is provided in Section 160(e), Title 29 U.S.C., "The findings of the Board with respect to questions of fact if supported by substantial evidence on the record considered as a whole shall be conclusive."

"Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co., et al. v. National Labor Relations Board et al., 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126.

In Universal Camera Corp. v. National Labor Relations Board, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456, the court defined the function of the Court of Appeals in reviewing Labor Board decisions. At p. 490, 71 S.Ct. at p. 465, the court said: "We should fail in our duty to effectuate the will of Congress if we denied recognition to expressed Congressional disapproval of the finality accorded to Labor Board findings by some decisions of this and lower courts, or even of the atmosphere which may have favored those decisions.

"We conclude, therefore, that the Administrative Procedure Act and the Taft-Hartley Act direct that courts must now assume more responsibility for the reasonableness and fairness of Labor Board decisions than some courts have shown in the past. Reviewing courts must be influenced by a feeling that they are not to abdicate the conventional judicial function. Congress has imposed on them responsibility for assuring that the Board keeps within reasonable grounds. That responsibility is not less real because it is limited to enforcing the requirement that evidence appear substantial when viewed, on the record as a whole, by courts invested with the authority and enjoying the prestige of the Courts of Appeals. The Board's findings are entitled to respect; but they must nonetheless be set aside when the record before a Court of Appeals clearly precludes the Board's decision from being justified by a fair estimate of the worth

of the testimony of witnesses or its informed judgment on matters within its special competence or both.

\* \* \* \* \* \*

" \* \* \* Whether on the record as a whole there is substantial evidence to support agency findings is a question which Congress has placed in the keeping of the Courts of Appeals. This Court will intervene only in what ought to be the rare instance when the standard appears to have been misapprehended or grossly misapplied."

We conclude that the interrogation of witnesses here under consideration did not interfere with the free exercise of the employees' rights to self-organization.

The findings of the Board that there was an independent violation of the Act, after the agreement was signed on October 19th, is not supported by substantial evidence. Having arrived at this conclusion, it is not necessary to consider the conduct of the employer prior to the execution of the agreement.

The order of the Board will be vacated and its request for enforcement denied.