**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**LESTER BROTHERS, INCORPORATED, Respondent**

No. 9369.

United States Court of Appeals
Fourth Circuit.

Argued June 17, 1964.

Decided Sept. 28, 1964.

Margaret M. Farmer, Attorney, N. L. R. B. (Arnold Ordman, General Counsel, Dominick L. Manoli, Associate General Counsel, Marcel Mallet-Prevost, Asst. General Counsel, and Melvin Pollack, Attorney, N. L. R. B., on brief), for petitioner.

Bailey Patrick, Jr., Charlotte, N. C. (Broaddus, Epperly & Broaddus, Martinsville, Va., and Blakeney, Alexander & Machen, Charlotte, N. C., on brief), for respondent.

Before SOBELOFF, Chief Judge, BRYAN, Circuit Judge, and HEMPHILL, District Judge.

HEMPHILL, District Judge.

The National Labor Relations Board, pursuant to the National Labor Relations Act (hereinafter called the Act), as amended (61 Stat. 136, 29 U.S.C. § 151 et seq., as amended by 73 Stat. 519) petitions for enforcement of the Board's order requiring Lester Brothers, Incorporated, to cease and desist from certain activities found to be unfair labor practices, to reinstate discharged employee Hobart Young, making him whole from any lost wages, restoring him to his former position and seniority, to make available records necessary to accomplish the above, and to post notices that the Company pledged itself not to interfere with, restrain, or coerce its employees in their right to join the United Brotherhood of Carpenters and Joiners of America, AFL–CIO (hereinafter referred to as the Union).

Respondent, a Martinsville, Virginia, business corporation (hereinafter called the Company) is engaged in the manufacture, processing and sale of prefabricated houses, lumber and building supplies, and was at the times referred to engaged in interstate commerce within

the meaning of Section 2, subsection (6) of the Act.[1]

From 1946 to 1959 no Union activity took place at the plant, but in that year the Union began activities culminating in two weeks of Union and Company activity similar but not identical to the pattern which often emerges in contests of this nature. Employees Martin and Craig were discharged because of Union activities,[2] were later reinstated, and, as a result of proceedings [3] an enforcement order was issued against Respondent directing that the Company cease and desist from certain unfair labor practices, to reinstate the two employees, etc. On March 21, 1962 this Court granted the enforcement,[4] and thereafter began the chain of events which present the issues presently before this Court.

Employee Young, who had a good record with the Company during five years of employment, except for three minor infractions,[5] had been active in Union activities previously, was a witness for the Government in the 1960 action. His affiliation was known.[6] On the morning of April 18, 1962, one Layenby [7] Assistant Plant Superintendent, passed by the plant location where Young, who had been ordered to cut some 14' ¾" rafters, was operating a saw. Young claims he had the boy on the fork-lift used for such purposes pick up a bale of what was called 14' material and move it to the saw where Young measured some of the bale [8] and, upon finding the length only 14' ½", refused the bale, and asked fork-lift operator to send a rick or bale of 16' material, from which he proceeded to cut

rafters to fill his saw order. After he had cut approximately 10 pieces Layenby came by and asked why he was cutting rafters out of 16' material instead of 14' and Young attempted to explain. Layenby went to the office and shortly thereafter (35 rafters) Carmichael came up to the saw and told Young he was fired. Young testified he had cut the 14' ¾" rafters from 16' material before; Respondent's position was that Young was discharged for cause because he "wasted" material. The trial examiner found his error was human, that it was not uncommon and that there was no "malice aforethought."

On the weekend of March 30—April 1, 1962, one Reid Stewart, International Representative for the Union, contacted interested employees, later met with Craig, Martin, and Young at Young's house. Young was given about 100 Union application cards which Young distributed. Young returned 40 to 45 signed. He planned another meeting April 17th,[9] en route, near the meeting site, he met three men around a small building, one of whom was Posey Gilbert, Jr., another George Critts. This organizational meeting lasted from 7:00 P.M. to 9:30 P.M.

Other testimony reveals that Roy Warren, screen door department foreman, made statements that Lawson Lester, Respondent President, indicated he wanted a Company Union; that supervisor Thomasson pulled Union cards from the pocket of employee R. J. Foley and asked, "Boy, what are you doing with these damn things?" Later Thomasson

---

1. Note the enforcement order, and findings of fact and conclusions of law thereon in N. L. R. B. v. Lester Brothers, Inc. (4th Cir. 1962), 301 F.2d 62.

2. This Court so held. See Note 1, and notice particularly 301 F.2d 62 at 68–69.

3. 131 N.L.R.B. 1144.

4. Note 1, supra.

5. Foreman Carmichael related that (1) he once stayed at toilet too long, (2) grumbled about white men having a better showing than he did, and (3) once smoked on premises.

6. Respondent's counsel Blakeney stated: "The point of his being interested in and active on behalf of the Union, generally, will not be contested by the Company."

7. Layenby, Carmichael, Thomasson and Anderson, Company employees, were admitted to be supervisors.

8. A bale or rick consists of 90 pieces. The 14' material was supposed to be approximately one inch longer than necessary to maket 14' ¾" rafters.

9. It is worthy of note that Young was fired the morning after this meeting.

came to Foley's work location, stated, "The damned old Union ain't in here yet and I know you can do the job faster than this"; that Posey Gilbert was at one time Assistant Foreman; that Respondent discouraged appearances of witnesses at the NLRB hearing; that there was a pattern of coercion against Union activity.

 The question as to the real reason for the discharge of Hobart Young was a question of fact to be decided by the National Labor Relations Board, which is empowered to consider circumstantial as well as direct evidence and where its finding is supported by circumstances, from which the conclusion of discriminatory discharge may be legitimately drawn, this Court may not substitute its judgment for that of the Board.[10] The Board had ample evidence to support its finding that Respondent discriminated with respect to the hire and tenure of Hobart Young, thereby discouraging membership in the Union. The record pictures a climate of discouragement of Union activity of which Young was a victim.

The National Labor Relations Act provides: "The findings of the Board with respect to questions of fact if supported by substantial evidence on the record considered as a whole shall be conclusive."[11] This Court is bound by the mandate and direction of Congress in the application of the Court's authority to the statute's rule of review. This Court has no authority to try a labor relations case de novo."[12] Therefore this Court makes no finding of fact as such, nor will it attempt to substitute its judgment for that of the National Labor Relations Board,[13] unless such judgment is not supported by substantial evidence, viewing the record as a whole.

Following the standard of review established in Universal Camera Corp. v. N. L. R. B., 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456, we are of the opinion that there is substantial evidence in the record as a whole to support the Board's findings on which the order is based. The enforcement decree will be entered in accord with Section 10(e) of the National Labor Relations Act, as amended (61 Stat. 136, 73 Stat. 519, 29 U.S.C. § 151 et seq.).[14]

Enforcement granted.

---

10. See Eastern Coal Corp. v. N. L. R. B., (4th Cir. 1949) 176 F.2d 131.

11. Title 29 U.S.C. § 160(e).

12. Osceola County Co-op Creamery Assn. v. N. L. R. B., (8th Cir. 1958) 251 F.2d 62.

13. N. L. R. B. v. Piedmont Wagon & Mfg. Co., (4th Cir. 1949) 176 F.2d 695.

14. See N. L. R. B. v. Lester Bros., Inc., supra, note 1, at 69.