NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

COVINGTON MOTOR COMPANY, Inc.,
Respondent.

No. 9619.

United States Court of Appeals
Fourth Circuit.

Argued Feb. 1, 1965.

Decided March 29, 1965.

J. Spencer Bell, Circuit Judge, dissented in part.

Linda R. Sher, Atty., N. L. R. B. (Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Assoc. Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, and Elliott Moore, Atty., N. L. R. B., on brief), for petitioner.

George V. Gardner, Washington, D. C. (Gardner, Gandal & Holroyd, Washington, D. C., on brief), for respondent.

Before BOREMAN, BRYAN and BELL, Circuit Judges.

ALBERT V. BRYAN, Circuit Judge.

The National Labor Relations Board now asks us to enforce its order imposing sanctions upon the Covington Motor Company, Inc. for violating §§ 8(a) (1) and (3) of the National Labor Relations Act, 29 U.S.C. §§ 158(a) (1) and (3). 146 NLRB 4. The offending conduct consisted of (a) the interrogation of employee Harry R. Wolfe about the union activities of other employees, and (b) the discharge of Wolfe assertedly for promoting unionization of the company's

repair division. Since, on our search of "the record as a whole", we think the factual premises of the order are not "supported by substantial evidence", we decline to enforce it. Universal Camera Corp. v. National Labor Relations Board, 340 U.S. 474, 491, 71 S.Ct. 456, 95 L.Ed. 456 (1951).

In the latter part of March 1963 the United Papermakers and Paperworkers, AFL–CIO, attempted to organize the employees in the company's garage at Covington, Virginia. The program encompassed the service departments of every automobile dealer in the city. During the campaign the union wrote the respondent company on April 2, 1963 claiming representation of a majority of its service employees. Replying on April 5, 1963, the company denied the claim, expressed its preference for an election under the direction of the National Labor Relations Board and added its opposition to a union as unneeded and unhelpful. These letters were posted on the company's bulletin board.

Meanwhile, on March 27, 1963, Wolfe, a mechanic in the body shop, asked the union for authorization cards on behalf of several co-workers who wished the union to act for them. The cards were brought to Wolfe at the garage by Clarence Farmer, an official of the union local. Although occasionally at the shop as a customer, Farmer did not want to be seen with Wolfe, so after handing Wolfe the cards, they stepped into a small enclosure to talk. As he left, Farmer says he waved to Wallace Byer, secretary-treasurer of the company, then standing at the office door. He was positive that Byer had not observed him with Wolfe.

An hour or so afterwards, according to Wolfe, he was informed by an associate of a call for him on the telephone. Wolfe testifies he thought the caller was Farmer and in reply to his question Wolfe named several of the garage men who had signed authorization cards. However, he further says, that just after the conversation ended, he realized the inquirer was Byer. He had frequently talked by phone to Byer and knew his voice well, but he does not explain his failure to identify Byer at once.

Although they were at hand and, in fact, one of them had summoned him to the phone, Wolfe did not tell any of the card signers of the call. Nor did he afterwards say anything to Byer about the incident. Indeed, he did not refer to it again until the next day when he mentioned it to Earl Bailey, the president of the company, while in his office at lunch time. As he related it to Bailey, Wolfe had given Byer no names. Byer disclaimed any knowledge of such a call.

The telephone call constitutes the interrogation the Board now assigns as violative of § 8(a) (1) of the Act. As is evident, the proof to connect Byer with the event is frail. Even if it were substantial, the inquiry was permitted by § 8(c) of the Act, for it was free of coercion. Mere interrogation as to who has signed cards is not anti-union pressure. Federation of Union Representatives v. N. L. R. B., 339 F.2d 126, 138 (2 Cir. 1964); Salinas Valley Broadcasting Corp. v. N. L. R. B., 334 F.2d 604, 607 (9 Cir. 1964); Beaver Valley Canning Co. v. N. L. R. B., 332 F.2d 429, 433 (8 Cir. 1964); Lincoln Bearing Co. v. N. L. R. B., 311 F.2d 48, 50 (6 Cir. 1962); Bon-R Reproductions, Inc. v. N. L. R. B., 309 F.2d 898, 904 (2 Cir. 1962); N. L. R. B. v. Kelly & Picerne, Inc., 298 F.2d 895, 898 (1 Cir. 1962). Besides, the union was ready to reveal the cards to establish its representation.

The other accusation, to repeat, is put upon the termination of Wolfe's employment on April 9, 1963. He failed to appear for work the day before, Monday April 8, sending word by his son that he would be unable to report because he had to repair a fence on his farm. The employer gave the absence on Monday as the cause of his discharge. The Trial Examiner found, and the Board confirmed, that "the real reason for the Respondent's dismissal of Wolfe on April 9 was not the fact that he had been absent on another Monday but that he had recently become an active proponent of the Paperworkers."

Indisputably, Monday was a key day in the repair department, especially in the body shop where Wolfe was engaged. He had been in the company's employment intermittently over a period of twenty-five years. Before his reemployment the last time—about twelve months prior to his release—he had not been with the company for nearly a year. Periodic drinking and frequent non-appearances for work had been his downfall in the past. The reengagement was arranged during the ownership of the company by Jesse Wright. A brother, Wilbur Wright, was then foreman of the shop, and at the direction of Jesse he asked Wolfe to rejoin Covington. Jesse entertained a sympathy for those addicted to excessive drinking and constantly endeavored to rehabilitate them.

During Jesse Wright's proprietorship, Bailey, then the manager, had protested Wolfe's return because of his history of absenteeism. However, Foreman Wright justified the rehiring by the hope that Wolfe's recent marriage might mean a change in habits.

Bailey and Byer acquired the company at the end of 1962 or the beginning of 1963, following the death of Jesse Wright. Thereafter, but before the inception of union promotion, Foreman Wright complained to Bailey about Wolfe's resumption of his former pattern of behavior. He threatened to leave the company unless Wolfe was ousted. But as the need for body shop repairmen was pressing, Wolfe was retained. Inquiries for such workers had already been put out by the company.

The Examiner found—and his findings were accepted by the Board—that:

"* * * From April 1962, when he was rehired and until his discharge, Wolfe was absent a total of 12 Mondays. The last such day of the week when he was off duty, prior to April 8, was February 25. *This, of course, was an absentee record that could readily serve as grounds for dismissal in any business organization.* * * *" (Accent added.)

■■ On this recount of incontrovertible facts, there is no warrant for holding that the absentee record was not the real basis for Wolfe's discharge. The reasoning of the Examiner, adopted by the Board, is that if absenteeism had been the actual ground for the discharge, it would have been ordered much earlier. When, as here, the employer has justification to terminate an employment, we have held that the Board cannot impute an ulterior motive to the employer from the synchronism, without more, of the firing and the employee's union advocacy. We condemned it in Wellington Mill Division, West Point Mfg. Co. v. N. L. R. B., 330 F.2d 579, 588 (4 Cir. 1964), cert. denied, 379 U.S. 882, 85 S.Ct. 144, 13 L.Ed.2d 88 (Oct. 19, 1964), and N. L. R. B. v. Threads, Inc., 308 F.2d 1, 13, (4 Cir. 1962).

Under this ruling of the Board, patience and tolerance with the delinquency of an employee are penalized. The employer must risk accusation of an unfair labor practice to rid itself of an unresponsible employee. Putting an employer in such a dilemma is not only unjust but has no place in labor-management relations. It is particularly prejudicial to the employee, for it discourages indulgence by an employer of an employee's weaknesses. In our judgment the conclusion of the Board regarding Wolfe's discharge was no more than a surmise.

The order of the Board will not be enforced.

Enforcement denied.

J. SPENCER BELL, Circuit Judge (dissenting in part).

I respectfully dissent from the decision of my brethren with respect to the discharge of Wolfe, since I would affirm the Board's finding on that point. Nothing is to be gained by an elaborate recitation of the factual details. Suffice it to say that Wolfe was not discharged, despite his long record of work absenteeism, until after it was discovered that he was engaged in pro-union activities. The majority's decision rests primarily upon the same self-serving declarations of Bailey

and Wilbur Wright which the trial examiner rejected as the basis for Wolfe's termination.

I think the Board's finding regarding Wolfe's discharge is supported by substantial evidence in the record considered as a whole. As I noted in my dissent in Wellington Mill Div., West Point Mfg. Co. v. N. L. R. B., 330 F.2d 579, 592 (4 Cir.), cert. denied, 379 U.S. 882, 85 S.Ct. 144, 13 L.Ed.2d 88 (1964), I think the Board's factfinding function and its expertise in the field of labor relations are entitled to deference from reviewing courts, and I think the majority's opinion in this case fails to accord the Board's findings the respect to which they are entitled.

I would enforce the Board's order pertaining to the section 8(a) (3) violation.