The FIRESTONE TIRE AND RUBBER COMPANY, Petitioner,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent.

No. 75–1891.

United States Court of Appeals, Fourth Circuit.

Argued March 4, 1976.

Decided Aug. 4, 1976.

Walter B. Connolly, Jr., Asst. Counsel, Akron, Ohio, The Firestone Tire and Rubber Co. (Lester S. Hyman, John S. Hoff, Leva, Hawes, Symington, Martin & Oppenheimer, Washington, D. C., on brief), for petitioner.

John C. Rother, Atty., N. L. R. B., Washington, D. C. (Alan D. Cirker, Atty., N. L. R. B., John S. Irving, Jr., Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, and Elliott Moore, Deputy Associate Gen. Counsel, N. L. R. B., Washington, D. C., on brief), for respondent.

Before WINTER and RUSSELL, Circuit Judges, and FIELD, Senior Circuit Judge.

DONALD RUSSELL, Circuit Judge:

The employer, The Firestone Tire & Rubber Company, has petitioned to review and set aside, and the National Labor Relations Board in turn has cross-petitioned to enforce, an order of the Board finding that Firestone violated § 8(a)(3) and (1) of the Act by discharging one Clark Trowbridge.[1] We deny enforcement.

Trowbridge applied for and secured employment at the Wyandotte plant of Fire-

stone on the basis of a written application which required the applicant to state whether he had ever been "discharged or asked to resign by an employer" and which warned in bold-face type that any misrepresentation or falsification on the form would constitute "sufficient reason" for dismissal. In answer, Trowbridge denied he had been discharged by any previous employer. This answer was concededly false; he had actually been discharged by his last two employers. Following his employment by Firestone, after his 60-day probationary period, he affiliated with the U.A.W., which was the collective bargaining agent at the plant, and was subsequently selected as a union steward. Some ten weeks after Trowbridge had been employed, his supervisor was told by another employee that Trowbridge had been discharged or asked to resign by two recent employers. After verifying this information, Firestone discharged Trowbridge. Trowbridge then invoked the grievance processes under the terms of the collective bargaining agreement prevailing in the plant. He proceeded unsuccessfully through the several steps provided in such agreement for resolving the propriety of a discharge, short of final arbitration. The union, however, declined to seek final arbitration and did not seek relief on Trowbridge's behalf before the Board. Trowbridge individually, however, did file a charge with the Board and it was on the basis of this individual charge that the Board entered its order.

█ At the outset, it should be noted that Firestone advanced a legitimate, non-discriminatory reason for Trowbridge's discharge. Firestone offered uncontradicted evidence that its practice was to discharge any employee upon discovery of a falsification of answers on his employment application. It supported this evidence with proof of several prior instances at this plant where, in applying this rule, it had discharged employees.[2] On this evidence, the administrative law judge made a finding, adopted by the Board, that Firestone had a "long established, company-wide policy" of discharging employees for falsifying their employment applications.[3] Such a policy is neither unusual nor unreasonable. As the Court said in *N.L.R.B. v. Mueller Brass Co.* (5th Cir. 1975), 509 F.2d 704 at 713, "[A]ny employer has the right to demand that its employees be honest and truthful in every facet of their employment. Absent an anti-union motivation, any employer has the right to discipline an employee for his dishonesty or untruthfulness." Nor does the Board really dispute this right of an employer to discipline for "untruthfulness" in an employee's employment application.[4]

2. Firestone, also, submitted letters from a large number of its other plants detailing instances where employees had been discharged for falsification of employment applications, but the Administrative Law Judge denied admission on the ground that they were "hearsay." Firestone offered, it seems, to make proof through proper officials at these plants but opportunity to make such proof was denied. Whether this ruling was proper is unimportant in the light of the Board's express finding on this point.

The Board appears inexplicably to undertake to discount the evidence that Firestone at the Wyandotte plant had discharged other employees for falsification of employment applications by arguing that, while falsification was the reason given, there were other, more cogent reasons for those discharges. Such an argument would contradict the Board's own specific finding that Firestone had a "long established, company-wide policy" of discharging for such falsification and is entitled to no consideration for that reason in this proceeding.

3. P. 12, Administrative Law Judge's Decision.

4. The Board itself in a number of decisions has recognized the legitimacy of a discharge for falsification of an employment application:

In *Whittaker Knitting Mills* (1973) 207 NLRB 1019, two employees, who were college graduates, had purposely misstated their educational background by failing to indicate that they were college graduates and had given incorrect information on prior employment.

In *Big Three Industries, Inc.* (1971) 192 NLRB 370, the employee had omitted the information that he had been terminated as an employee by an earlier employer.

In *Western Publishing Co.* (1971) 188 NLRB 245, the employment application included, as did that involved here, the statement above the applicant's signature that "I understand that any wilful misrepresentation of essential facts may be sufficient reason for dismissal." The employee in that case had concealed that he had been terminated as an employee by two prior employers.

The basis of its finding is that, though a permissible ground for discharge existed, such ground was in this case "pretextual" and that the discharge under review was actually motivated by Trowbridge's aggressive union activity.

It is the well-settled rule in this Circuit that when an employer demonstrates, as does Firestone here, that it had a good ground for the discharge of an employee apart from any antiunion animus or activity, it is not sufficient to establish a violation of the Act for the Board to declare that the discharge was "pretextual."[5] As the Court aptly put it in *Famet, Inc. v. N.L.R.B.* (9th Cir. 1974), 490 F.2d 293, 296, " 'it is all too easy to say that adequate cause for discipline was seized upon as pretextual in the case of union representatives. * * * When good cause for criticism or discharge appears, the burden which is on the Board is not simply to discover some evidence of improper motive, but to find an affirmative

and persuasive reason why the employer rejected the good cause and chose a bad one.' "[6] "Were the rule otherwise, any employee who had been guilty of conduct warranting discharge could protect himself by openly engaging in union activities, and run for luck, a procedure well illustrated in *Billen.*"[7] It is accordingly clear that "illegal motive [in a discharge] cannot be based merely on the discharged employee's union organizational activity; and by offering only such proof," the Board cannot sustain the burden of proof which it must assume in a case such as this.[8] And this is particularly so, when "analysis reduces the record to mere suspicion to support the Board's charges" of pretextual discharge, and the record "fails to provide sufficient integrity to sustain the examiner's and Board's finding" of pretextual discharge.[9]

In applying these rules to this case, we begin with the fact that the record is completely devoid of any evidence of anti-

---

In all these cases, discharge for falsification of the employment applications was found to be legitimate.

**5.** *N.L.R.B. v. Patrick Plaza Dodge, Inc.* (4th Cir. 1975), 522 F.2d 804, 807; *N.L.R.B. v. Consolidated D. Elec. Co., Div. of C. Corp.* (4th Cir. 1972), 469 F.2d 1016, 1024–28; *N.L.R.B. v. Covington Motor Company* (4th Cir. 1965), 344 F.2d 136, 138; *Maphis Chapman Corporation v. N.L.R.B.* (4th Cir. 1966), 368 F.2d 298, 304; *Hazel-Atlas Glass Co. v. National Labor Relations Bd.* (4th Cir. 1942), 127 F.2d 109, 114 and 117. *Cf., N.L.R.B. v. Hanes Hosiery Division, Hanes Corp.* (4th Cir. 1969), 413 F.2d 457, 458.

**6.** Quoting from *NLRB v. Billen Shoe Co.* (1st Cir. 1968), 397 F.2d 801, 803.

Other formulations of the same rule are set forth in these cases: *N.L.R.B. v. Patrick Plaza Dodge, Inc., supra,* 522 F.2d 807–8; *D'Yourville Manor, Lowell, Mass. v. N.L.R.B.* (1st Cir. 1975), 526 F.2d 3, 6; *N.L.R.B. v. Klaue* (9th Cir. 1975), 523 F.2d 410, 413; *N.L.R.B. v. Howell Automatic Mach. Company* (6th Cir. 1972), 454 F.2d 1077, 1080–83; *N.L.R.B. v. Agawam Food Mart, Inc.* (1st Cir. 1970), 424 F.2d 1045, 1947; *Cain's Coffee Company v. N.L.R.B.* (10th Cir. 1968), 404 F.2d 1172, 1175–6.

**7.** *N.L.R.B. v. Patrick Plaza Dodge, Inc., supra,* 522 F.2d at 807.

This same principle was stated in *N.L.R.B. v. Mueller Brass Co., supra,* 509 F.2d at 173, where in reply to an argument by the Board to the contrary, the Court said:

"To follow the Board's lead in this case would be effectively to insulate every Union activist from investigation or discipline for violation of Company rules, especially at the time of a Union election."

And in *N.L.R.B. v. Consolidated D. Elec. Co., Div. of C. Corp., supra* (469 F.2d at p. 1024, n. 21), we said, quoting *N.L.R.B. v. Ogle Protection Service, Inc.* (6th Cir. 1967), 375 F.2d 497, 505–506, *cert. den.,* 389 U.S. 843, 88 S.Ct. 84, 19 L.Ed.2d 108:

"Membership in a union does not immunize employees against discharge for reasons other than union hostility. * * * An employer's stated or avowed opposition to a labor union is not, in itself, sufficient evidence to sustain a finding that his employees were discharged because of discrimination against the union."

In *Nix v. N.L.R.B.* (5th Cir. 1969), 418 F.2d 1001, 1008, the Court said:

" ' * * * where "a man has given his employer just cause for his discharge, the Board cannot save him by showing that he was pro-union and his employer anti-union." ' " (Quoting from *N.L.R.B. v. Atkins Saw Division,* 5 Cir. 1968, 399 F.2d 907 at 912).

**8.** *N.L.R.B. v. Consolidated D. Elec. Co., Div. of C. Corp., supra,* 469 F.2d at 1024.

**9.** *See, N.L.R.B. v. Freeman Company* (8th Cir. 1972), 471 F.2d 708, 710.

union animus on the part of the employer. To the contrary, the record indicates that Firestone had been long habituated to unionism and that there had been a good harmonious working relationship between it and the union over a period of many years. There was no credible evidence in the record of any antiunion conduct on the part of Firestone. The sole ground on which the Board seeks to support its finding of "pretextual discharge" is that Trowbridge had been a union steward and as such had been abrasive in his representations to his employer in that capacity. This suggestion loses persuasiveness when it is observed that there were some fifty other union stewards in this plant. It is not to be supposed that they were any less vigilant or aggressive in the performance of their function as a union steward than Trowbridge; indeed, the Board found that other stewards were equally or more aggressive in their performance as union stewards than Trowbridge. Certainly, they had been longer engaged in such activity and were more expert in it than Trowbridge. There was no suggestion in the record that any one of these other stewards had ever been disciplined on pretextual grounds because of their zeal in the performance of their duties as union steward. No reason is intimated why the employer should have been inclined to act any differently in its treatment of Trowbridge than in that of any of the other stewards. Nor could the employer have had any reason to assume that Trowbridge's successor as steward would have been any less aggressive. Actually, Trowbridge's activity as a steward seems to be exaggerated in the administrative law judge's findings, as approved by the Board. He was unfamiliar with the collective bargaining agreement by his own admission and had to seek advice from other stewards in making any complaints. A person with so little familiarity with his role as a steward hardly fits the role of an aggressive advocate of rights under the collective bargaining agreement.

The only circumstance which the Board latches onto in support of its conclusion is that the employer did not discover the falsification of the employment application by Trowbridge until after he had become a union steward. Firestone concedes that it did not discover the falsification in Trowbridge's prior employment record until after he had been working a little over two months and after he had become a union steward. Firestone apparently had no reason to question the accuracy of Trowbridge's representation until a fellow employee told a supervisory official of Firestone that Trowbridge had recently been "fired" from two other prior jobs. That information naturally triggered an immediate investigation which resulted in the discovery of Trowbridge's prior discharges. We do not consider the delay in investigating Trowbridge's prior employment provides a basis for a genuine suspicion, much less a substantial basis for a belief, of impropriety in Firestone's action. The Board recognized, as we have already stated, that, under its "long-established, company-wide policy," Firestone would, when and if it discovered this type of falsification of an employee's employment application, have discharged him; and this apparently would be true whenever the falsification was discovered. It followed that policy here. Simply because Firestone did not discover such falsification either before or immediately after Trowbridge was hired, does not provide sufficient evidence to impugn Firestone's motive in discharging him. We do not find significant that Trowbridge was a union steward. Such a circumstance loses significance in a case where, as here, the employer freely recognizes the union, works with the union, and has, according to this record, evidenced no antiunion animus whatsoever.

It should, also, be borne in mind that an essential element in the Board's finding is proof of knowledge on the part of the company official who actually made the discharge decision of Trowbridge's activities as a union steward. Absent any such knowledge, it is manifest that a finding that the discharge was motivated by such fact cannot be found to be based on any substantial evidence. And, as we have seen, the bur-

den of establishing such knowledge rested on the Board. This burden it could not sustain if its finding to that effect rested on mere suspicion or pure conjecture. But the finding of the Board on this point does rest on mere suspicion and conjecture, as the language of the Board itself clearly establishes. Wukovits was "the company official who made the decision to discharge Trowbridge." This is uncontradicted in the record. Wukovits testified unequivocally that he did not know when he made this decision that Trowbridge was a union steward. Support for his testimony is found in the fact that the list of stewards periodically furnished Firestone by the union itself at the time did not list Trowbridge as a union steward. The Board seeks to supply contrary evidence, however, by drawing upon Trowbridge's testimony that, in his capacity as a union steward, he had made complaints to his supervisors, Fields and Hubbard, as a predicate for the pure conjecture that "it is improbable that both Fields and Hubbard failed to convey to Wukovits their displeasure with Trowbridge's repeated employee complaints as steward." This is the sole basis on which the Board would find that Wukovits knew at the time he directed Trowbridge's discharge that the latter was a union steward. It is mere conjecture. Such supposition of the Board cannot rise to the level of credible evidence and is ineffective to refute Wukovits' testimony of want of knowledge or information.

We find that the order of the Board finding that Trowbridge's discharge was motivated by his union activities is not supported by substantial evidence, and accordingly deny enforcement.

*ENFORCEMENT DENIED.*