**NEPTUNE WATER METER COMPANY,
a Division of Neptune International
Corporation, Petitioner,**

v.

**NATIONAL LABOR RELATIONS
BOARD, Respondent.**

No. 76–1097.

United States Court of Appeals,
Fourth Circuit.

Argued Oct. 5, 1976.

Decided Feb. 1, 1977.

Rehearing En Banc Denied
March 11, 1977.

Robert L. Thompson, Atlanta, Ga. (Elarbee, Clark & Paul, Atlanta, Ga., on brief), for petitioner.

Howard Perlstein, Atty., N.L.R.B., Washington, D. C. (John S. Irving, Jr., Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Carl L. Taylor, Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, N.L.R.B., Grant E. Morris, Jr., Atty., N.L.R.B., Washington, D. C., on brief), for respondent.

Before CRAVEN, BUTZNER and RUSSELL, Circuit Judges.

CRAVEN, Circuit Judge:

This is a petition for review and cross-application for enforcement of an order of the National Labor Relations Board. The Board found that the Company violated § 8(a)(1) of the Act by interrogating, inter-

fering, restraining, coercing, threatening and engaging in surveillance of its employees with respect to their Union or concerted activities, and violated § 8(a)(3) and (1) of the Act by discharging employees Thomas T. McLemore and William D. Tyson because of their Union activity. The only question presented on appeal is whether the Board's findings of fact are supported by substantial evidence.

The Company admits, with respect to the § 8(a)(1) violation, that the Board's findings of alleged threats and interrogation are based upon conflicting testimony, and where that is true the Board may decide which version to believe. Petitioner's Brief at 32. The Company nevertheless insists that the discharges of Thomas McLemore and William Tyson were for just cause under § 10(c) of the Act and were not wrongfully motivated. It is true that the trial examiner concluded that the Company had reason to be dissatisfied with McLemore's record for tardiness. App. 67. But he nevertheless found that the motivation for termination was not tardiness but the Company's knowledge that McLemore had signed an authorization card and had joined with others to support the Union.

The same thing can be said of Tyson. He had unexcused absences attributable to drunkenness, App. 69, but it was not until after the election at which Tyson had been the Union observer that he was discharged. In the course of deciding that Tyson was discharged for his Union activism, the Board weighed conflicting factors: his supervisor's manifest antipathy to Tyson's advocacy of the Union, his satisfactory work performance as reflected by periodic raises, and his unexcused absences. App. 74.

█ It is for the Board and not for us to decide whether McLemore and Tyson were fired for just cause or for Union adherence and activity. *NLRB v. Lester Bros., Inc.,* 337 F.2d 706, 708 (4th Cir. 1964). Nor is the Board's finding of invidious motivation impaired by its findings of tardiness and unexcused absences. It is settled in this circuit, and most of the others,[1] that "it is enough that a discriminatory motive was a factor in the employer's decision." *Winchester Spinning Corp. v. NLRB,* 402 F.2d 299, 304 (4th Cir. 1968); *Winn-Dixie Stores, Inc. v. NLRB,* 448 F.2d 8, 13 n. 16 (4th Cir. 1971); *NLRB v. Hanes Hosiery Div., Hanes Corp.,* 413 F.2d 457, 458 (4th Cir. 1969); *Filler Products, Inc. v. NLRB,* 376 F.2d 369, 377 (4th Cir. 1967).

In *Firestone Tire and Rubber Co. v. NLRB,* 539 F.2d 1335 (4th Cir. 1976), we said that "'the burden which is on the Board is not simply to discover some evidence of improper motive, but to find an affirmative and persuasive reason why the employer rejected the good cause and chose a bad one.'" Judge Russell was writing in the context of an employer with long experience in labor relations and without the slightest indication of anti-union animus. Indeed the findings of fact in the *Firestone* case did not disclose that the Company official who actually fired the employee even knew of his activities as a Union steward.

█ *Firestone* is not to be read to mean that there is a dichotomy between good and bad reasons. It does not change the rule in this circuit that discriminatory motivation need be only *a* factor in the discharge. Rather, it made clear that where there is evidence of a proper motive for dismissal, the Board's mere characterization of the Company's assigned reason as "pretextual," without citation of evidence indicating invidious purpose, will not suffice. In short, mere union membership and concerted activity does not, of course, insulate a worker from being discharged for just cause. Nor does an employer's anti-union animus destroy his right to discipline for just cause. But these are not irrelevant factors, as

---

1. *NLRB v. Southeastern States,* 73 LRRM 2702 (5th Cir. 1970); *Betts Baking v. NLRB,* 380 F.2d 199 (10th Cir. 1967); *Teamsters Local 152 v. NLRB,* 120 U.S.App.D.C. 25, 343 F.2d 307 (1965); *NLRB v. West Side Carpet Cleaning Co.,* 329 F.2d 758 (6th Cir. 1964); *NLRB v.* *Symons Mfg. Co.,* 328 F.2d 835 (7th Cir. 1964); *NLRB v. Great Eastern Color Lithographic Corp.,* 309 F.2d 352 (2d Cir. 1962); *NLRB v. Buitoni Foods Corp.,* 298 F.2d 169 (3d Cir. 1962).

Judge Russell concedes, and may be considered by the Board in drawing an inference that invidious motivation was *a factor* in deciding to discharge.

The rule is that if the employee has behaved badly it won't help him to adhere to the Union, and his employer's anti-union animus is not of controlling importance. But if the employee is a good worker and his breach of the work rules trivial, the more rational explanation for discharge may be invidious motivation. Such motivation can be found from the absence of any good cause for discharge. This must be so unless we are willing to assume something we know to be false: that businessmen hire and fire without any reason at all.

■ In the end after weighing all relevant factors including particularly the gravity of the offense, an unfair labor practice may be found only if there is a basis in the record for a finding that the employee would not have been discharged, though he may have been subjected to a milder form of punishment for the offense, except for the fact of his union activity.

When McLemore was hired, he was instructed by the personnel supervisor that "he was not to pay any attention" when someone asked him to sign a union card or attend a meeting. App. 62, 177. McLemore violated these instructions by signing a card and going to a union meeting. App. 63, 180. When he was fired, his supervisor said, "I told you about that union business." App. 63, 181. Or as another witness expressed it, "I warned you about messing with the union." App. 64, 67, 155, 169, 236.

The gloating refrain, "I told you so," probably reveals a person's intention as clearly as any other phrase in the English language. Certainly in this case it serves to sustain the Board's finding that the Company's alleged reason for the discharge was a sham.[2]

■ Our review of the record reveals substantial evidence to support the Board's finding of discriminatory motivation in the dismissals of McLemore and Tyson, as well as the 8(a)(1) violations, and accordingly the Board's order will be

ENFORCED.

DONALD RUSSELL, Circuit Judge, dissenting:

I dissent from the holding in the majority opinion that the Board's order for the reinstatement of the employee McLemore should be enforced.

In *Firestone Tire and Rubber Company v. National Labor Relations Board* (4th Cir. 1976) 539 F.2d 1335, we denied reinstatement in an employee's discrimination case under the National Labor Relations Act, applying the rule that where an employer has "good ground for the discharge of an employee," it will not do for the Board, in order to support an order of reinstatement, "simply to discover some evidence of improper motive," but it must "find an affirmative and persuasive reason why the employer rejected the good cause and chose a bad one." Nor was there anything novel or unusual about the reliance upon such a rule as a basis for denying reinstatement. As long ago as 1940, we declared that, "[t]he employer must be permitted to dis-

---

**2.** McLemore's tardiness was considered by the administrative law judge in the context of shop practice. The regular starting time was 7 a. m., but skilled machinists like McLemore tended to work more than eight hours a day and sometimes started work before 5 a. m. McLemore's actual attendance record is set forth below. On ten out of the 17 days he worked he put in more than ten hours, and although he was late some mornings, on others he started as much as two hours and 15 minutes ahead of time.

| Date | Hour at which employee reported for work | Total number of hours worked that day |
|------|------|------|
| Aug. 26 | 7:00 a.m. | 10.00 hours |
| 27 | 7:10 a.m. | 10.89 hours |
| 28 | 6:00 a.m. | 10.44 hours |
| 29 | 7:04 a.m. | 9.80 hours |
| 30 | 6:58 a.m. | 8.00 hours |
| Sept. 3 | 4:45 a.m. | 12.00 hours |
| 4 | 7:04 a.m. | 7.94 hours |
| 5 | 9:48 a.m. | 8.24 hours |
| 6 | 5:54 a.m. | 10.38 hours |
| 7 | Saturday on which McLemore overslept and did not call in | |
| 9 | 5:37 a.m. | 10.92 hours |
| 10 | 5:08 a.m. | 12.10 hours |
| 11 | 4:55 a.m. | 13.04 hours |
| 12 | 7:01 a.m. | 10.58 hours |
| 13 | 8:03 a.m. | 6.97 hours |
| 16 | 7:44 a.m. | 8.26 hours |
| 17 | 5:08 a.m. | 10.06 hours |

charge the inefficient, the irresponsible, the disobedient, the immoral" and that, when the employer's explanation for the discharge "is a reasonable one, the onus is upon the Board to establish the falsity of this explanation and the truth of its own interpretation;" nor does the Board sustain such "onus" merely by proving that the employee was a union member or was active in union organization. *Martel Mills Corp. v. National Labor Relations Bd.* (4th Cir. 1940) 114 F.2d 624, 631, and 633. This is not to say that union membership or, as I point out later, even employer anti-animus is not relevant but it is to say that, standing alone or together, they are not sufficient to satisfy the burden the Board bears in a case where there is a valid and legitimate reason for discharge. This point was made clear in *N.L.R.B. v. United Brass Works, Inc.* (4th Cir. 1961) 287 F.2d 689, 693, where we said that the fact that the discharged employee "was a union member and an active movant in the organizational drive will not shield him from release for good cause. (Citing *Martel*) If discrimination may be inferred from mere participation in union organization and activity followed by a discharge, *that inference disappears when a reasonable explanation is presented to show that it was not a discharge for union membership.*" (Italics added) We repeated the same thought recently in *Torrington Company v. N.L.R.B.* (4th Cir. 1974) 506 F.2d 1042, 1047:

"In determining employer motivation for an alleged unlawful discharge, all the circumstances of each case must be weighed; this is the function of the Board, and conflicts in testimony, or inferences to be drawn therefrom, must be resolved in the Board's favor. *J. P. Stevens & Co. v. NLRB,* 406 F.2d 1017, 1020 (4th Cir. 1968); *Filler Products, Inc. v. NLRB,* 376 F.2d 369, 378 (4th Cir. 1967). This court has held, however, that an inference of discrimination resulting from mere participation in union organization and activity, followed by a discharge, disappears when a reasonable explanation is presented to show that the discharge was

not for union membership. *NLRB v. United Brass Works, Inc.,* 287 F.2d 689, 693 (4th Cir. 1961)."

*See, also, N.L.R.B. v. Patrick Plaza Dodge, Inc.* (4th Cir. 1975) 522 F.2d 804, 807 and *N.L.R.B. v. Consolidated D. Elec. Co., Div. of C. Corp.* (4th Cir. 1972) 469 F.2d 1016, 1024–8.

The majority opinion does not expressly repudiate the principle stated in *Firestone* and similar cases by our Circuit. It would, however, put a new gloss on the principle. Taking its cue from the facts in *Firestone* and entirely disregarding the earlier cases, it suggests that the principle is applicable only "in the context of an employer with long experience in labor relations and without the slightest indication of anti-Union animus." Such principle has not, though, been so confined in its application. Indeed, in *Firestone,* we quoted with approval *Nix v. N.L.R.B.* (5th Cir. 1969) 418 F.2d 1001, 1008, wherein the Court said:

"* * * where '."a man has given his employer just cause for his discharge, the Board cannot save him by showing that he was pro-union and his employer anti-union." ' " [1] [Quoting from *N.L.R.B. v. Atkins Saw Division,* 5 Cir. 1968, 399 F.2d 907 at 912.]

In *N.L.R.B. v. Consolidated D. Elec. Co.,* supra, we quoted with approval from *N.L. R.B. v. Ogle Protection Service, Inc.* (6th Cir. 1967) 375 F.2d 497, 505–6, *cert. denied* 389 U.S. 843, 88 S.Ct. 84, 19 L.Ed.2d 108, the following:

"Membership in a union does not immunize employees against discharge for reasons other than union hostility. * * * An employer's stated or avowed opposition to a labor union is not, in itself, sufficient evidence to sustain a finding that his employees were discharged because of discrimination against the union." [2]

And in *Maphis Chapman Corporation v. N.L.R.B.* (4th Cir. 1966) 368 F.2d 298, *N.L. R.B. v. Covington Motor Company* (4th Cir.

---

**1.** 539 F.2d at 1337, n. 7.

**2.** 539 F.2d at 1337, n. 7.

1965) 344 F.2d 136 and *N.L.R.B. v. Threads, Incorporated* (4th Cir. 1962) 308 F.2d 1, this principle was applied where the employer was charged with an "anti-Union animus." Never in any case has this Court declared that the principle is to be confined to situations where there is a finding that the employer is free from "anti-Union animus." To the contrary, as we have seen, we have affirmed that it is applicable whether the employer has manifested an anti-union bias or not; and the majority opinion is clearly wrong in its implication to the contrary.

I do not mean to intimate that if an employee's discharge is motivated, in whole or in part by the employee's union affiliation, the Board may not order reinstatement. What I do submit is that, when the employer has a valid reason to discharge an employee, the Board, in order to compel reinstatement, has, as our Court has so often said, the burden of establishing by substantial evidence "the falsity of this explanation [of valid reason] and the truth of its own interpretation,"[3] and of finding " 'an affirmative and persuasive reason why the employer rejected the good cause and chose a bad one.' "[4] In such a case, I believe, in line with the authorities of this Circuit and of others, that where "the choice [is] between lawful and unlawful motives [as it is in this case], the record taken as a whole must present a substantial basis of believable evidence pointing toward the unlawful one." *Lozano Enterprises v. N.L.R.B.* (9th Cir. 1966) 357 F.2d 500, 503.[5] In *Torrington,* we stated:

> "The crux of the matter is that the Board, after discounting all explanations offered by an employer for a discharge of employees, must find unlawful motivation through substantial direct or indirect evidence. Substantial evidence means 'evidence furnishing a substantial basis of fact from which the fact in issue can reasonably be inferred; and the test is not satisfied by evidence which merely

creates a suspicion or which amounts to no more than a scintilla or which gives equal support to inconsistent inferences.' " (p. 1047)

And we repeat, the authorities are clear to the effect that evidence that the employer was "anti-union" and the employee a union member—even an active one—does not meet the test of "substantial" evidence of discriminatory discharge where there is, as in the case of McLemore, a valid reason for his discharge. *N.L.R.B. v. Consolidated D. Elec. Co., Div. of C. Corp., supra,* 469 F.2d at 1024–5, n. 21, and cases there cited; *N.L.R.B. v. United Brass Works, Inc., supra,* 287 F.2d at 693.

Measured by the foregoing standards—as stated in case after case from *Martel* to *Firestone,* it seems to me manifest that there is not substantial evidence in support of the Board's findings of discriminatory discharge of the employee McLemore. McLemore was a probationary employee. Employed on August 26, he was discharged on September 17, seventeen working days later. During his employment of seventeen days he was late for work seven times and, in addition, he failed completely to report for work at all on one day. His tardiness over this period varied from a few minutes to more than an hour. He was warned about his flagrant tardiness and counseled to improve by his superiors. One of these reprimands and counselings occurred some days after he had signed a union card and attended a union meeting, which are regarded significant events in the Board's opinion. Warnings and counseling, the good faith of which is not questioned in the Board's opinion, were unavailing. Seemingly McLemore made no effort to remedy his tardiness. He remained completely indifferent to the requirement that he report to work on time. Finally, on September 16 he reported to work three-quarters of an hour late. The employer naturally despaired of inducing him to conform to the

---

**3.** 114 F.2d at 631.

**4.** 522 F.2d at 807, quoting from *N.L.R.B. v. Billen Shoe Co.,* (1st Cir. 1968) 397 F.2d 801, 803.

**5.** Cited with approval in *N.L.R.B. v. Consolidated D. Elec. Co., Div. of C. Corp.,* 469 F.2d at 1025.

working hours in the plant. It resolved on that day to discharge him and so advised him on the 17th.

On the undisputed facts in this case, no one can defend McLemore's irresponsibility and flagrant disregard of company rules. An industrial plant operates on a working schedule to which the employees must conform. The employer in such a plant cannot repeatedly condone and overlook tardiness by one employee without infecting its entire plant force with disrespect for working hours. The inevitable result of any continued tolerance of a violation of the employer's rules is the complete loss of employee discipline. When, despite, two warnings, McLemore persisted in his tardiness, the employer not only had a legitimate right to fire him; if it had not done so, disregard for working hours in the plant would have become the rule and, under the Board's decision, any employee who was late would be immune from discharge *provided he had signed a union card.*

Even the Trial Examiner, whose report on this part of the case was adopted by the Board did not attempt to excuse McLemore's delinquencies. He conceded that "[b]y any standard this was an unsatisfactory record for tardiness." He went further and conceded that the employer had a perfect right to discipline McLemore. He implied that had the employer suspended McLemore or imposed any punishment short of discharge, such action would have been permissible—a statement which can only be interpreted as meaning that if the employer had imposed any punishment short of discharge, he would have found such discipline was not discriminatory. In other words, the fact that the employer discharged rather than suspended McLemore established discriminatory motive. I submit that such fact will not constitute substantial evidence sufficient to make the discharge discriminatory. After all, it is not for the Board to usurp the function of the management and determine on the measure of discipline for an employee's delinquency and especially to use it as a basis for finding improper motive.

McLemore wasn't an active union member. He had merely signed a union card and attended a single union meeting. He had never been vigorous and outspoken in his unionism. There were other employees who were, and employees who were neither disciplined nor discharged. The mere fact that McLemore had signed a union card and attended a union meeting and no more is insufficient to overcome the Board's burden, where there is, as here, a valid reason for discharge.[6] The only additional facts with which the Board seeks to bolster its findings of discriminatory motive for singling out for discharge an innocuous union member out of a great number of union members, many of whom were active and outspoken, are the alleged statement to McLemore, when hired, that the employer was opposed to the union and advised him not to join the union, as had many of the others in the department where he would be working, and a statement allegedly made by a supervisor, who incidentally had not made the decision to discharge, that "I told you about the union business." There is nothing wrong with an employer expressing its opposition to the union, nor will that fact be sufficient to sustain the Board's burden in a case such as this.[7] It will be noted that the employee was not threatened that if he joined a union, his job would be jeopardized. The employer told him that most of those with whom he would be employed were active union members who would likely seek to proselytize him. That most of the employees were known by the employer to be active union members engaged in soliciting other employees, was a clear assurance to McLemore that union membership would not lead to discharge.

6. *Torrington Company v. N.L.R.B., supra,* 506 F.2d at 1047; *Winn-Dixie Stores, Inc. v. N.L. R.B.* (4th Cir. 1971) 448 F.2d 8, 12–15.

7. *N.L.R.B. v. Gissel Packing Co.* (1969) 395 U.S. 575, 616–20, 89 S.Ct. 1918, 23 L.Ed.2d 547;

*N.L.R.B. v. Ogle Protection Service, Inc., supra,* 375 F.2d at 505; *N.L.R.B. v. Threads, Incorporated, supra,* 308 F.2d at 8 and 9.

And, the statement attributed to a supervisor at the time his discharge was communicated to McLemore, was not made as the basis for his discharge, or even by the officer who directed the discharge; the reason assigned for his discharge was his repeated tardiness. The Board recognizes that this supervisor who made the statement cited by it in support of its conclusion was not the official who passed on and directed the discharge of McLemore. Nor is there any evidence or suggestion that he participated in such decision; in fact, in his position he would not be assumed to have so participated. The Board concludes, however, without any evidence and wholly on speculation, that as a supervisor he must have heard something from the responsible officers of the management to support the statement he made. That speculation, which can be regarded as no more than bare suspicion, or, as a similar form of reasoning was characterized in *Torrington,* as "an inference which is based on a supposition," [8] I submit, does not satisfy what, in *Martel Mills,* we said was the Board's "onus * * * to establish the falsity of this explanation [as given by the employer] and the truth of its own interpretation." [9] This does not represent a discovery of "some evidence of improper motive," which, in both *Firestone* and *Patrick Plaza Dodge,* two recent cases of this Court, we declared was not sufficient to overcome proof of good cause to discharge. Certainly, it does not provide a finding of "an affirmative and persuasive reason why the employer rejected the good cause and chose a bad one," which is the test as we expressed it in *Firestone.*[10] I simply cannot find in this record substantial evidence to support the Board's order of reinstatement of McLemore.

*Winn-Dixie Stores, Inc. v. N.L.R.B., supra,* 448 F.2d at 12–13, a case cited with approval in the majority opinion, it seems to me, compels the denial of enforcement to the order reinstating McLemore. The case of Darnell Gause in that case was, if anything, stronger for the Board's finding than in this case. We, however, found that the Board's order of reinstatement for Gause was not supported by substantial evidence.[11] The same result should follow here. Moreover, the facts in support of the Board's finding in connection with the discharge of Crumley in *Torrington, supra,* are stronger than the facts supporting the Board's finding with reference to McLemore's discharge but we found them unsupported by substantial evidence.[12]

In my opinion, the majority opinion in this case departs from the principles established in a consistent pattern of prior decisions of this Court and can only be sustained if the Court is prepared to repudiate these prior authorities.

8. 506 F.2d at 1049.

9. 114 F.2d at 631.

10. 539 F.2d at 1337.

11. In *Winn-Dixie,* Gause, an old employee, was fired, after being warned, for being late two successive mornings. The Board sought to overturn this reason for discharge by three circumstances: 1. Gause's brother was a union steward and a union leader; 2. Gause, himself a union member, had been accused by the employer of attempting to proselytize other employees for the union; and 3. a company official had allegedly said the employer intended "to fire the old guys * * * one by one because if we fire more than one it would cause a strike." The Board found that the reference to "old guys" was to union members. *See* 448 F.2d at 13, n. 17.

12. In *Torrington,* the Board sought to counter the good ground for discharge of the probationary employee Crumley by evidence that, when employed, he was told by the employer that "the plant was non-union, that he had information that Crumley was involved in the 1969 union campaign, and that the union was not good for Union County or the plant, and they hoped Crumley would not be involved in the future." [506 F.2d at 1044] There was testimony, also, that Crumley early became active in the union campaign to organize the workers and he was told by one of the foremen that if he [Crumley] was "caught talking * * * about the union, [he] might lose [his] job." [506 F.2d at 1044] Later, Crumley testified that he was "caught" by a supervisor talking on behalf of the union to a fellow-employee, and his discharge shortly followed. [506 F.2d at 1049]

PETITION FOR REVIEW OF AN
ORDER OF THE NATIONAL
LABOR RELATIONS BOARD

For reasons appearing to the court,

IT IS ORDERED that a suggestion for rehearing en banc originating within the court fails because a majority of the judges did not vote in favor of it, and that Judge Widener dissents from the failure to grant en banc reconsideration for the reasons expressed in Judge Russell's dissenting opinion.

Upon a poll of the court in response to suggestion of counsel for rehearing en banc, the suggestion fails for lack of a majority in favor of it.

RUSSELL, WIDENER and HALL, Circuit Judges, would grant rehearing en banc for the reasons stated in RUSSELL, Circuit Judge's, dissenting opinion.